Good morning, your honors. May it please the court, my name is Gordon Shuffler. I represent your appellant plaintiffs in this matter, the Louisiana Crawfish Producers Association and its members. We're here today, your honors, in what I believe to be much more of a factual dispute than a legal dispute. The sole singular issue before the court today, and that was before the court back at the district level, is whether these two defendants engaged in dredging activity when they made the canals at issue in this case. The lower court ruled, basically they said, look, if there's evidence that dredging took place, then that is substantially related to maritime activity, thus you have maritime claims. Nobody's appealing that decision. What the court did rule, though, was that for several reasons, these defendants, there was no evidence that they actually engaged in dredging. One of the defendants here, Southern Natural Gas, is not going to be able to tell you they did not engage in dredging. They openly admitted that they dredged. The second one, Florida Gas, has not openly admitted that they dredged back in the 60s, but they submitted no evidence, in my humble opinion, that suggests that they actually did not engage in dredging. As we'll discuss in a minute, that record, in my opinion, is clear. But in that connection, on a motion for summary judgment, all they have to allege is that there's an absence of evidence that they engaged in dredging. Isn't that right? That'd be correct, Your Honor. All right, and then it's incumbent upon you to come forward with some evidence that they did. That's correct. What is that evidence? Well, I guess my question to you is which defendant are you referring to? Florida. Florida National Gas. I want to take them separate, same as you. So let's do Florida National Gas first. Florida Gas was one of the defendants that we actually did submit evidence on, all right, and they submitted evidence to refute us. They submitted the quote, unimpeached testimony of their corporate opponent, Mr. Dennis Alters. We submitted, in support of our motion, the Corps of Engineers dredge and fill permit that was acquired by Florida. We submitted their court... Well, let's stop with the permit. Permit says what somebody's allowed to do. Yes, Your Honor. That's not evidence that they actually did it, is it? Well, it's evidence... You couple that with the remaining evidence, the fact that there's actually a canal out there. So the permitted activity was to build a pipeline in a canal. There is a canal there today. We submitted on the record a photograph of that canal. We suggest, and there's no bone to pick, that there's actually a pipeline out there. What Florida's position is, is this. They're saying, look, we put our pipeline out there, but we didn't dredge the canal that that pipeline is in. If you take their position, they basically are saying, look, we just went out and found a canal out in the Atchafalaya Basin and used that to put our pipeline in. But, I mean, as it stands now, your evidence is, it exists, therefore you dug it. Well, it's not just that. If you look at the permit drawings, all right, these are drawings prepared by Florida Gas and its engineers back in the 60s. You look at the vicinity maps, and, Your Honor, I'm happy to give you guys a reference to the record on that. That record documents 18-737 and 738 and 18-741 and 742. You look at those drawings that are submitted to the Corps of Engineers in order to get these permits, they have to attach a vicinity map of where they're going to be laying their pipeline. You look at these vicinity maps, these are based on USGS quad maps from that time frame, from the 60s. There is no canal depicted on those drawings. They show where their pipeline is going to go. They don't show that there's any pre-existing canal. You couple that with what we found out later on in the deposition with Southern Natural Gas of this back in the 60s, just months later, Southern Natural Gas, literally months later, about two or three miles up the river from where Florida Gas' pipeline was, Southern Natural Gas is proposing to put in their own pipeline. A memo comes up in their files that says Southern Natural Gas were looking for a reputable dredging contractor. So they called Florida Gas and said, hey, we hear you guys dealt with this company. Are they good? Yes, we were happy with their dredging work. All right. All that Florida Gas has is the speculations and the contentions of their corporate opponent, which I would suggest is self-serving testimony. But basically, all that they've said is, look, we can't really answer the question of how that canal got there. I think it may have been a logging canal. It may have been this canal. It may have been whatever. But my look at the record shows that Florida Gas didn't dig any canal. Now, you look at the permit, you couple it with the information from Southern Natural Gas. You look at the drawings that Florida Gas prepared itself, there was no existing canal out there. The canal didn't come into existence until after this permit was granted. And I'll submit to your honor, their pipeline is still sitting in the bottom of that canal as we sit here today. So that's our position. Bottom line, they didn't point to an absence of evidence submitted on our part. We're dealing with a 50-plus-year-old project. We're lucky we get the documents that we did have on the case. Now, that said, you know, we would submit that based on everything, at the minimum, there's a genuine issue of fact as to whether Florida Gas engaged in dredging out there. So what you have is you have that it didn't exist before the relevant time period. You have the geographic documentation or drawing documentation of that. That's correct. Coupled with the permit that it was approved to do the dredging. That's correct. And then, or maybe it doesn't specifically refer to dredging in the permit. Technically, no, your honor. It references the laying of a pipeline. And then you have that all of a sudden there is. There's a problem. That's what you got. Yes, your honor. And, you know, you've got to, we, I've taken this for granted. This case has been going since they filed it the summer I was studying for the bar exam. It's been going for a while. I take a lot of the facts in this case for granted, you know, but the fact of the matter is, is that industry standard, we, at some point or another, we had almost 50 companies in this case. The industry standard was very simple. Flotation process, which is referred to in Florida Gases cover letter to the court, is dredge a canal, run a, run a, to float a pipeline barge in it and run it down, down that canal, lay the pipeline in the bottom of the canal. When they did this, they left oil banks on the sides of these canals and that's why we have the situation we have here today. Your honors, I'm sorry. No, the clock's ticking. I'm, I was interested in Florida. I'm really interested in SNG. I actually find your argument with regard to them a little more compelling. All right. But I don't want to rush you. Well, I need, I need to rush. I've got about seven minutes left here. So Southern Natural Gas, your honors, I'm sure you guys have read our briefs. You see the situation we're in. Bottom line is this. We had, this case has been going for, going on 12 years now. We have taken well over 100 depositions in the case. There have been so many dispositive motions filed in the case. We tried to count them this morning. I can't find them. We're lucky we have survived to this point in the case. In June of 2015, the court says, all right, guys, you guys need to get this case moving. So we, the first thing we wanted was, well, look, let's get a dispositive motion deadline in a case management order. And everybody was agreeable to doing that. That would be the end of all this ongoing train of dispositive motions. At the time, though, we had not, you know, having deposed all these other individuals and corporate entities, et cetera, we had not had the opportunity to depose Southern Natural Gas yet. So we made it a point. Talking with the opposing counsel when we were preparing that case management order, like, hey, guys, we want to at least have the right to depose Southern Natural Gas prior to having to oppose any sort of dispositive motion. All right? Everybody was agreeable. Sure. We even put it in the case management order. We will have 30 days from the date of the receipt of the transcript of that deposition in order to supplement our positions. Now, candidly, I guess in hindsight, looking back at the wording of it, it says we shall submit it, we shall supplement with information learned during the depositions. And Southern Natural Gas has taken the position, well, you didn't learn anything. You knew all along that there was no situation of this case at the time. Southern Natural Gas, when they filed this motion, nobody picked a bone about there not being dredging involved. When we opposed it, that whole motion was based on the idea that we were disengaged in construction of pipelines. We weren't engaged in any sort of pipeline construction. You guys went out and dredged canals. Then you built your pipelines in those canals. We're not worried about the pipeline, we're worried about the spoil banks from the canals. So we get... What did you get of the deposition that you didn't have before the deposition? Well, we got the chance to depose the man and ask him point blank, you know, did Southern Natural Gas build its canals via dredging? And his answer was unequivocally yes. We went into the Florida Gas deposition back in 2011 with the same questions and the same sort of evidence. And Florida Gas told us, no, we don't have any evidence we did any dredging. So this is really crucial to your case. It's not speculative and this and this plus this. It's just direct right there. But was this already in the request for admission? What's the deal with that? So that was part of the scheduling order too. We set a discovery cutoff. So discovery cutoff's coming up. I said, heck, I'm going to send them some requests for admissions. One of the admissions was, please admit you used vessels and dredging to build your is coming. In the Western District, basically the judgment just comes whenever it comes. Now I was under the impression the court was aware of the case management order and there was no sense of urgency on our part. We're still waiting on our transcript to come in from the Southern Natural Gas deposition. And I'm thinking all along we're comfortable. We can move forward because we're waiting on this deposition transcript. In retrospect, it would have been good to say we need more time to respond to the summary judgment. In retrospect, I would say yes. But in reality, we were under the impression all along the court was aware of its case management order. The court openly admitted in its denial of our rehearing that it was unaware of the case management order or those specific provisions. And you did file a response in accordance with what you believed to be the deadline under the CMR. Yes, Your Honor. We did. We had filed an opposition. And I guess the reason I'm hurrying is because I'm interested in this request for admission where they admitted to dredging. And the dredging, if that fact is accepted, that's sufficient to defeat their motion for summary judgment, isn't it? Yes, I would say so, Your Honor. And Rule 36 says that a request for admission is admitted at the moment that it establishes a fact in the case. I agree. I think that's what it said. I agree with you. And so they've established now that fact in the case. And I think they admit that in their briefs, that that's what it does. That's right. And so what is problematic for you, though, is that you get a motion for summary judgment granted in advance of your submission of those facts in your response to the motion for summary judgment. That's correct. Then you file a motion to reconsider. That's correct. And what's problematic for us is whether or not we're looking at an abuse of discretion standard or review de novo. Which one do we have? I'd say you've got a little bit of both, honestly. Ah, you're not helping me. That's what I've been saying. Well, look, I'll say this. The court did, it made a reference in this ruling that it did not consider the deposition testimony of Southern Natural and didn't consider all the documents that were submitted. Assume it's an abuse of discretion standard. Have you read, and I'm not sure I'm pronouncing it, Lube versus North Bay Enterprises? It's a recent Fifth Circuit decision having to do with a case where we actually found an abuse of discretion and a failure to grant a motion to reconsider on a similar issue. Well, I'd love to read it, Your Honor. I'd be happy to brief. Take all the time you need over the next minute or two. Fair enough. Thank you, Your Honor. I'll reserve my time for the end. It's Lube versus North Bay Enterprises, 817F3901. Let me proceed. I understand and I appreciate that, but I couldn't resist. Judge Elrod, to your question, you asked about the permit. The permit does not, my permit, Florida Gas' permit, does not reflect dredging. Well, but you need a canal, though, don't you? But there are canals there already, and as the testimony. Where does it say that there were canals there already? Because I thought the drawings showed that there were not adequate canals. Well, the drawings, I think, Your Honor, unsupported by any testimony do not show that, and the testimony of our corporate representative said there were, and in fact there were, timber canals all through there for decades and decades. And what our permit says is that we lowered it into an existing canal. That's what our permit says, by flotation process. So what we have, and as counsel admitted, is that when they took our deposition, Florida Gas' deposition, which, by the way, was in 2011, not around the time of the summary judgments. In 2011, our corporate representative looked at all the documents that existed, including contemporaneous documents, contemporaneous construction documents, contemporaneous engineering documents. And he said what it showed was, first of all, that the permit itself said that this pipeline would be laid by flotation process in an existing canal. So that's the evidence that we have there. Secondly, he testified, and I'm quoting here, if we had dug canals and done those things, then you would simply see in the notes how much canal damage would be, how much you would advance on a foot-by-foot basis. And there is none of that, he testified, in any of the records of Florida Gas. He testified, our contracting notes clearly indicate that it was just lowered in. He testified that in all the engineering documents that I've reviewed, which I believe are all that we have, there is not an indication of Florida Gas doing anything other than floating a pipeline in. So that's the evidence that we have. That's the absence of evidence that was indicated and that shifts the burden to them. And what they point to then is this vicinity map, which I respectfully submit does not establish that we dredged a canal. You contrast that, Your Honors, with what is shown. There's another party still standing. There's another party still standing in this case, which is one of the Dow entities. Their summary judgment was denied. Their permit says, quote, their permit application says it is for, quote, excavation of canals. So there's not enough for them to say to the jury, these other folks all had to dig and so Florida must have had to dig too. That's their argument, Your Honor. They had to support that in the record with something more than attorney argument. They didn't do that. The burden is on them. And just because some pipeline companies dredged doesn't mean that all pipeline companies dredged. They have come up with evidence, they say, that shows that Dow dredged. Okay. They've come up with evidence that says that S&G dredged. Okay. They have no evidence that Florida Gas dredged. And to the contrary, we have the reverse of that. We have the contemporaneous documents. We have the corporate representative unimpeached, unrebutted, uncontradicted by anybody else saying my review of the records is that we did not dredge. So that's the state of the evidence as before the court at the time it issued the summary judgment. They have come up with nothing since. What do you believe the procedural posture is vis-a-vis appellant's supposed new evidence? Well, as to – Do you believe the court considered it or not? Yeah, I think it directly considered it as to Florida Gas. And by the way, Your Honor, we do not have the request for admission issue. It's not in the record. They did propound a request for admission to us. We did respond to them. Frankly, we responded to them after the court ruled. You denied? We denied. Now, that's not in the record. Would that trigger DeNovo? I'm happy to submit it if appropriate. From your perspective, if the court considered the new evidence, it would be DeNovo review. That's correct, Your Honor. So you would give us the questions that we were being asked earlier about DeNovo and abuse of discretion. I think it would be, as to me, it would be a DeNovo review. The court did, and I can find the site if you need it in her opinion, where she directly addressed this new evidence, which, of course, we say ain't new, is unauthenticated, hearsay, and does not mention any dredging by Florida Gas. So as to us, it is DeNovo. I agree with that. And you're not going to opine as to your folks at the table with you? I'm going to sit down, Your Honor, unless the court has any other questions. Thank you. Though, of course, I have an opinion. Good morning. Richard McConnell on behalf of Southern Natural Gas Company. Can we start there? We can. That's the question. Did the court consider the evidence, and is it DeNovo as a result? With respect to the reconsideration, it is abuse of discretion. They did not consider it. The court did not consider the evidence. The court cited Molina and Tompley for her reasons to deny the 59E motion for reconsideration. Did not consider it. Did not consider it. So it's an abuse of discretion statement. Yes. For your client. For my client, S&G. So when you review the court's ruling on the 59E motion, it's abuse of discretion, not DeNovo. So I'm going to judge Mr. DeNovo. Have you read Louis v. Morgan? I have not, Your Honor, and I'd love to. I have not. I have not. I respond to the issues that were before us. I respond to the issues that were issued by the court. Unfortunately, I don't have my phone with me, so I couldn't pull it up during the few minutes that Mr. Usen was presenting to the court. What I do know is— What did you say about your phone? I said I didn't have my phone with me. They take them down? Actually, my client is here, and he thought that we could not bring phones into the courtroom, so I left it back at his office. So I did not have any access to the Internet. What I do know is that it's an extraordinary remedy. I do know that this is not an issue of new evidence. This is an issue of how the plaintiff described it, not me, as something that's been known for years, all caps, all bold, underlined, and never applied brief on page 10. It was never an issue at all. This is not an issue of new evidence. This is an issue of old evidence. This is an issue of cumulative—trying to obtain cumulative evidence on the same issue. Well, do you agree that if it is a fact that S&G engaged in dredging, that that's sufficient to defeat this motion for summary judgment? It would have been if they would have attached it to the opposition to the motion for summary judgment. This was not a fact. This was a fact, as they say, was known for years. This was a fact that was—well, of course, the documents, the documents say what they say. The court—the plaintiff attached to the opposition documents as to doubt. So was their view about the CMO and the fact that they still had time up until the moment they learned that a judgment had been issued on the motion for summary judgment, was their view of the CMO a reasonable view of when the deadline was? I don't believe so. It doesn't say you can present any evidence as to S&G 30 days after S&G's deposition. It does not say that. It says information learned from that deposition. There was nothing learned in that deposition that the plaintiff did not know before that deposition. There was nothing learned in that deposition that the plaintiff did not know at the time I filed my motion for summary judgment. Thirty days later, they filed their opposition. What's even— But isn't it a lot different to have—I mean you agree that the strongest evidence that someone can have is an admission of a party opponent. That's the strongest level of evidence to support a proposition. That's a strategic decision made by— No, I'm asking you in the abstract. I agree. That's the highest form of proof. I agree. I will answer your question, yes. I agree that a request for admission is the highest form. We admitted it in our deposition transcript. They had it on October 26th. Let me go a step back. Seventy-three days have expired from the day that they filed their opposition to the court rule. Seventy-three days. This case has been around as plaintiff's counsel have said or appellant's counsel have said since 2006. But when did they get that response to the request for admission? They sent it to—they sent it three days before the court ruled. They could have sent it to us— They got it three days before the court ruled. That's correct. And how long after the ruling did they file it? Well, if you—I'm going to take them for their word. They scrambled, they said. They obtained another transcript of the deposition, and then they filed it altogether. It was less than ten days, wasn't it? I believe so, Your Honor. I don't know for sure. Whatever the record says, the record says, and I'm not going to disagree with that. All right. What I'm saying is— Well, here's where I want to go. Because Rule 36 says that this fact is established in the case upon this admission that's made by your client. And so how can a court then—because you said the court did not consider it— how is it appropriate for a court not to consider a fact which is established in the case according to Rule 36? The court noted that it is incumbent upon the plaintiffs to present evidence in its possession before the court ruled to provide the court that information. Well, here we have a CMO, which allegedly they relied upon and had no reason to know that there was going to be a ruling by then. And then within a few days of getting the ruling, they filed a response. My problem is lawfully what am I supposed to do with a fact that's established in the case, which you agree would be sufficient to defeat a motion for summary judgment, which is brought to the attention of the court squarely a few days after the summary judgment has been issued. And now you tell me that the court just did not consider this established fact in the case. And that's all right. And if he would have provided it before the court ruled—I am saying it's all right, and let me answer that question. Yes, I am saying it's all right. If he would have—if the plaintiffs would have presented that evidence before the court ruled and the court didn't consider it— But it's established—here's where I'm going. I understand. It's established in the case actually before the ruling. It's established—at the moment you admit it, it's established in the case the way I read Rule 36. It is incumbent upon— The court just didn't know it. You may not—yes, sir. And again, you may not disagree with my response, but at the end of the day I represent my client. Is it your position that the court didn't know it or the court thought I don't care, it's late, and I'm going to punish him? I don't believe it was an issue of punishment. I believe it was an issue of the courts requiring the plaintiffs not only—that didn't see—let's step back. They could have sent that to me at any point in time since 2006. It's readily available. All they had to do was send me the request for admission. They chose not to. They chose not to. They waited until the last day after their opposition, according to the CMO, to send out—for me to respond to outstanding discovery requests. They sent me new discovery requests, and I answered them. Since 2006, this issue, according to the plaintiffs—I'm just referring to their briefing, not my briefing, their briefing—was known. It seems like you're pivoting. We're not—they could have done it earlier. Right. They could have done it earlier. We understand that. But you said the court's not just punishing them for not doing it on a timely basis. The question is is whether there's an abuse of discretion in not considering evidence that determines something factually in the case that was determined before the court did rule that is dispositive of— determines something and is dispositive of the summary judgment motion. Why isn't that the prime case where you should grant the reconsideration? Because when I review the standard that the court had to follow on a 59E motion, it's about new evidence or correcting manifest errors of law or fact. And I know that's my response to it over and over again, but that's what the court—they followed a 59E motion. That's what a 59E motion does. With respect to information or facts that were in the plaintiff's possession before the court ruled, the court has discretion to— Well, it's new that you've admitted it. It may have been established somehow by looking in these other documents that you could say, oh, well—but it's new that your client admitted it. That is huge. It was also admitted in the deposition, and they had the transcript on October 26th. It was, I mean, known—I can't—I know I keep repeating myself, Judge, but it was known. It was known according to the plaintiff from the beginning. It wasn't new evidence. If it was known, then why did you move for summary judgment on that point? We actually did not move for summary judgment on that point. We requested—and I have two minutes. I'm going to try to address this real quick. Our motion for summary judgment was asking the court to consider whether or not pipeline repair and construction bears a substantial relationship to a traditional maritime activity. It had nothing to do with dredging. Pipeline repair and construction. And so the court just granted summary judgment on that? No, Judge. The plaintiff responded to that argument and said dredging in a navigable water, regardless of the purpose, satisfy—is a maritime tort. So the plaintiff's argument, which was adopted by the court, required two things. One, navigable waters, which we agreed to, and two, dredging. That was a factual issue the plaintiff raised, and the plaintiff had the burden to establish that fact, and he denied it as to S&G. But it wasn't controverted. It wasn't established in the MSJ papers. It wasn't part of my argument. And they had the information at the time to put into the record, and they chose not to. So the de novo review—the MSJs reviewed de novo with the record before the court. That should be affirmed. An abuse of discretion on the motion for reconsideration is the issue of whether or not you consider that new evidence or evidence already in the plaintiff's possession.  And as a result, the court cannot abuse its discretion in denying the motion for reconsideration. Unless the court has any more questions, that's it. Thank you.  I did bring my phone, and I tried to read the Louie case during that time, but I was having trouble getting through it, so I cannot. I had trouble getting through it. I think it helps. Well, if it does, I'm happy to submit quotes to all your briefs. I would ask for both parties to submit not briefs but just a 28-J letter on the case by Friday, each side, you know, simultaneous 28-J letters. You have the citation. Thank you. Thank you, Your Honor. Briefly, in response, let's start with the Florida gas arguments there. They are referring to their deponent's testimony as if it was some concrete deposition testimony that affirmatively said we did not dredge a canal. If you look at the deposition testimony on the record, it was very clear. I'll read to you. He questions during the deposition. And so the question is, who made the canals? Were they entrances for timbering? It would seem logical since you're buying right-of-way agreements from timbering companies. All right. He's referencing a purely speculative thought that maybe it's a logging canal. In another instance, he admits, so it is our contention that Florida Gas lowered that pipeline in a relatively already established area, which is fairly consistent. Again, he's strictly saying these are bases on contentions. This is based on his theories about what's out there. He openly admitted he was unaware of there being any spoil banks, despite the fact that we had photographic evidence of spoil banks on this canal. We candidly do not have the 80-year-old proverbial salty dog that was on the dredge boat back then to refute Mr. Alter's deposition testimony. But what we do have is Mr. Alter's testimony, which is at best inconclusive as to whether they dredged the canal up there or not. We would submit it. If you look at the actual records that were submitted, including the permit that shows no canal existed beforehand, and now there is one, the proof is in the pudding. Or at the minimum, you've got a genuine issue of fact that should be submitted to trial. Not to mention we've also discovered through Southern Natural Gas's deposition that there was this company, this extra company, a dredging company referenced that Florida used. And perhaps further discovery with that company, assuming they still exist today, could show that Florida did engage in dredging. In response to the Southern Natural Gas arguments here, I would like to point out that none of those arguments, not a single one about the timeliness of our filing of any of this stuff, none of that was argued until after the lower court ruled against us on summary judgment. It was right after that that they got on the bandwagon, oh, this is what we meant in the case management order. This is what we meant. It was only supposed to be new evidence you got in this deposition. That was never argued before, and there is a pivot that is going on here. Southern Natural Gas is jumping on the coattails of the lower court's decision and saying, yeah, well, it's true. They were late in filing. The reality is— And it's true that you made an attempt to convene that deposition sooner. Oh, yes. We were asking for that deposition in June of 2015. After we set all the deadlines, the final briefing deadline— And the later date was at the request of SNG. That's right. That's right. According to—they apparently had a deponent with health issues and surgeries, et cetera. So we begrudgingly agreed to it, thinking we were protected by the case management order. Next thing, though, is Southern Natural Gas, he just admitted dredging was never an issue on their motion. And I agree. They never submitted anything. No evidence one way or the other as to whether dredging occurred from Southern Natural Gas. We didn't submit anything, and they didn't submit anything in response to us. There is zero evidence from either side on the record as to whether Southern Natural Gas— as to whether there was dredging that occurred or not. You look at—we cited in our brief several cases, the Bozeman case, the Woodham case. You know, even if we had never filed an opposition, they still have to meet the initial burden of getting a summary judgment. And there is zero evidence on the record from them saying— Look, they're not even pointing to the fact that we didn't show evidence that they dredged it. Counsel, your time is up. My apologies. Thank you all. Thank you. We have your arguments and cases under submission. We're going to take a—